```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Patricia C. Coffey**

   v.                                    Case No. 18-cv-503-PB
                                          Opinion No. 2019 DNH 126
**N.H. Judicial Retirement
Plan et al.**


**MEMORANDUM AND ORDER**

The New Hampshire Judicial Retirement Plan permits a judge in active service to retire with a pension if she has at least 15 years of creditable service and is at least 60 years of age. The issue this case presents is whether a former judge with sufficient creditable service has a right to a pension even though she resigned before she reached the minimum retirement age.

Patricia Coffey served as a full-time New Hampshire Superior Court judge for 16 years. She resigned in 2008, at the age of 54. Several years after Coffey turned 60, she applied for a pension. The Plan's Board of Trustees denied her request because it determined that a judge must be in active service when she attempts to claim a pension. Coffey disagreed and filed this action. The matter is before me on cross-motions for summary judgment.

# I. THE NEW HAMPSHIRE JUDICIAL RETIREMENT PLAN

The Judicial Retirement Plan ("Plan") is codified as Chapter 100-C of the New Hampshire Revised Statutes. It is "a defined benefit plan providing disability, death, and retirement protection to [its] members and their families." N.H. Rev. Stat. Ann. § 100-C:2, I. The benefits available under the Plan vary depending upon whether a judge leaves service by retirement, by death, or "for reasons other than retirement or death." See id. §§ 100-C:5, 100-C:6 (retirement), 100-C:7 (death), 100-C:8 (reasons other than retirement or death).

The Plan lays out three different paths to retirement. First, § 100-C:5, I authorizes a judge to retire and claim a "service retirement allowance" at designated ages with sufficient creditable service. Id. § 100-C:5, I. The earliest date at which a judge may retire and claim a service retirement allowance is age 60.[1] Id. Second, § 100-C:5, VII permits a

---

[1] The allowance varies depending on a judge's age when she retires and her years of creditable service. A judge with at least 15 years of creditable service may retire at 60 and receive an annual allowance equal to 70% of the judge's final year's salary. N.H. Rev. Stat. Ann. § 100-C:5, IV. One percent is added for each additional year of creditable service, but the total allowance may never exceed 75% of the judge's final year's salary. Id. § 100-C:5, IV, V. If a judge waits until age 65 to retire and has at least 10 years of creditable service, she is entitled to a 75% annual allowance. Id. § 100-C:5, II. A judge may also retire at 70 with at least 7 years of creditable service and receive a 45% annual allowance. Id. § 100—C:5, III. Each additional year of service for a judge who retires at age 70 entitles the judge to a 10% increase over the 45% level, provided that the total allowance does not exceed 75% of the judge's final year's salary. Id. § 100-C:5, III, V.

judge who is not eligible for a service retirement allowance to retire at any time if she has at least five years of creditable service. Id. § 100-C:5, VII. A judge who retires under this provision is entitled only to have her contributions to the Plan returned with interest. Id. Third, § 100-C:6 authorizes a judge to retire on a "disability retirement allowance" at any time and claim a 70% annual allowance if she becomes "permanently and totally disabled." Id. § 100-C:6.

If a judge dies while in office or after becoming eligible either for a service retirement allowance or a disability retirement allowance, § 100-C:7 authorizes the judge's spouse (while unmarried) or her minor children (if the judge leaves no spouse) to receive an annual payment of ½ of the judge's salary. Id. § 100-C:7.

Finally, § 100-C:8 provides that a judge who "ceases to be a judge for reasons other than retirement or death" is entitled only to repayment of the judge's contributions to the Plan. Id. § 100-C:8, I. Once contributions are refunded, the judge's rights under the Plan are terminated. Id.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). In this context, a "material fact" is one that has the

"potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (internal quotation marks omitted). A "genuine dispute" exists if a jury could resolve the disputed fact in the nonmovant's favor. Ellis v. Fidelity Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

On cross-motions for summary judgment, the standard of review is applied to each motion separately. See Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006); see also Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006) ("The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review."). Thus, I must "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

The parties agree that no material facts are in dispute and that I may resolve the case on the record submitted.

### III. ANALYSIS

Coffey bases her claim to a service retirement allowance on § 100-C:5, I, which provides in pertinent part that:

> Any member who has at least 15 years of creditable service and is at least 60 years of age . . . may retire on a service retirement allowance . . . upon written application to the board setting forth on what date, not less than 30 days nor more than 90 days subsequent to the filing of the application, the member desires to be retired. During such period of notification, the member may have separated from service.

N.H. Rev. Stat. Ann. § 100-C:5, I.  She argues that this provision grants a current or former judge a vested right to a service retirement allowance at age 60 if she has sufficient creditable service.  She then claims that she is entitled to an allowance even though she resigned years before she reached the minimum retirement age because she has more than 15 years of judicial service and is now more than 60 years old.  As I explain below, Coffey's argument fails because § 100-C:5, I plainly provides that a judge must be eligible to "retire" to claim a retirement allowance.  Because Coffey resigned before she was eligible to retire, she is not entitled to an allowance.

When interpreting a statute, New Hampshire courts "first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning."  Petition of Carrier, 165 N.H. 719, 721 (2013).  If the statute is clear and unambiguous, the court will not look beyond its language to determine legislative intent.  In re Town of Seabrook, 163 N.H. 635, 644 (2012).  The court must interpret the text "within the context of the statute as a whole" and "construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result."  White v. Auger, 171 N.H. 660, 666 (2019) (internal quotation marks omitted).  "The legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of

a statute should be given effect." Garand v. Town of Exeter, 159 N.H. 136, 141 (2009) (internal quotation marks omitted).

Here, the Plan's plain language dooms Coffey's claim. Section 100-C:5, I authorizes a judge to "retire" on a service retirement allowance. N.H. Rev. Stat. Ann. § 100-C:5, I. The Plan defines "retirement" as "withdrawal from active service with a retirement allowance granted under the provisions of this chapter." Id. § 100-C:1, XIV. Given this straightforward definition, the only plausible way to read § 100-C:5, I is that it requires a judge to be in active service when she elects to retire and claim a service retirement allowance. Because Coffey resigned before she became eligible to retire on a service retirement allowance, she has no right to an allowance.[2]

All the textual evidence supports this view. First, § 100-C:5, I expressly provides that a judge may separate from service during the 30-to-90-day period between the date that a judge submits her application for retirement and the date that her retirement becomes effective. Id. § 100-C:5, I. If Coffey's

---

[2]  Coffey does not argue that she retired when she resigned from the judiciary at age 54, nor could she. Coffey was not eligible to retire on a service retirement allowance at that point because she was too young. See N.H. Rev. Stat. Ann. § 100-C:5, I. While she might have retired pursuant to § 100-C:5, VII because she had more than five years of creditable service, that provision does her no good because it would have entitled her only to a return of her contributions to the Plan with interest. See id. § 100-C:5, VII. Thus, her current claim hinges on her contention that she did not retire until she applied for a service retirement allowance years after she resigned.

6

reading of § 100-C:5, I were correct, this provision would be utterly superfluous because a judge could separate from service at any point before reaching retirement age and still claim a service retirement allowance. The New Hampshire Supreme Court has made it quite clear that courts should not generally presume that the legislature intended to use such superfluous statutory language. See Merrill v. Great Bay Disposal Serv., Inc., 125 N.H. 540, 543 (1984).

Second, Coffey's interpretation results in an absurd reading of § 100-C:6, which governs disability retirement benefits. That section permits a disabled judge to "retire" on a disability allowance at any time. N.H. Rev. Stat. Ann. § 100-C:6. If, as Coffey argues, a judge need not be in active service to retire, a judge could resign after a brief period of service and years later claim a disability pension if she becomes unable to perform judicial duties. Consider a judge who resigned after serving for one day, went into private practice, and ten years later became unable to perform judicial duties but was otherwise capable of practicing law. Under Coffey's reading, that former judge would be entitled to a disability retirement allowance because she did not have to be in active service when she became disabled. This absurd result is avoided if the Plan is read to require that a judge be in active service when she elects to retire. Cf. White, 171 N.H. at 666 (statutes should be construed to avoid absurd results).

Third, Coffey's interpretation leaves the Plan as a whole incoherent. Section 100-C:8 makes it clear that a judge who "ceases to be a judge for reasons other than retirement or death" is not entitled to a retirement allowance. Yet under Coffey's reading of § 100-C:5, I, a judge is entitled to a retirement allowance at age 60 if she has sufficient creditable service even if she resigned years before she was eligible to retire. This reading leaves § 100-C:5, I in direct conflict with § 100-C:8, a conflict that disappears if a judge must be in active service when she elects to retire. Coffey's argument thus makes no sense when § 100-C:5, I is construed within the context of the Plan as a whole. Cf. Franciosa v. Hidden Pond Farm, Inc., 171 N.H. 350, 355 (2018) ("We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result.")

Finally, a comparison of the Judicial Retirement Plan with the State's public employee retirement plan extinguishes any lingering doubt about the viability of Coffey's argument. The public employee retirement plan provides "vested deferred retirement benefits" for certain state employees, public school teachers, police officers, and firefighters (collectively, "public employees"). See N.H. Rev. Stat. Ann. §§ 100-A:10, 100-A:1, X. Eligible public employees who complete 10 years of service and cease to be employees "for reasons other than retirement or death" are "deemed in vested status and . . . may

8

collect a vested deferred retirement allowance" after they reach the minimum retirement age.  Id. § 100-A:10.  This allows a public employee to separate from service after working for 10 years and later apply for a deferred retirement allowance.  In the alternative, those public employees may seek a return of their contributions to the retirement plan.  See id.  By contrast, § 100-C:5, which was enacted after § 100-A:10, has no similar language that allows a judge who separates from service after attaining the requisite years of service to later claim a vested right to a retirement allowance.  The fact the legislature expressly granted certain public employees a vested right to claim retirement benefits without granting a similar right to judges sends a strong signal that judges were not granted vested rights to retirement benefits if they resign before they become eligible to retire.  Cf. State Emps. Ass'n of N.H. v. N.H. Div. of Pers., 158 N.H. 338, 345 (2009) ("[W]here the legislature uses different language in related statutes, we assume that the legislature intended something different.") (internal quotation marks omitted).

     Coffey attempts to salvage her claim by invoking § 100-C:2, which provides that the Plan "is intended for all time to meet the requirements of a qualified pension trust within the meaning of section 401(a) and to qualify as a governmental plan within the meaning of section 414(d) of the United States Internal Revenue Code of 1986, as amended."  N.H. Rev. Stat. Ann. § 100-

9

C:2, I. According to Coffey, her reading of § 100-C:5, I is required to ensure that the Plan retains its favorable tax status under the Internal Revenue Code ("IRC"). The problem with this argument is that it is based on the incorrect premise that the Plan's tax status is endangered if it is construed in accordance with its plain language.

To be a qualified pension trust under IRC § 401(a), a governmental plan must satisfy the vesting requirements of § 411. See 26 U.S.C. § 401(a)(7). Section 411(e) provides that a governmental plan complies with § 411 if it satisfies the vesting requirements established by the versions of § 401(a)(4) and § 401(a)(7) that were in effect on September 1, 1974, before ERISA was enacted. See id. § 411(e)(2). At that time, § 401(a)(4) provided that contributions and benefits under a qualified plan could not discriminate in favor of employees who are officers, shareholders, supervisors, or highly compensated employees. See id. § 401(a)(4) (as of Sept. 1, 1974). Section 401(a)(7) also then specified that a qualified plan must

> provide[] that, upon its termination or upon complete discontinuance of contributions under the plan, the rights of all employees to benefits accrued to the date of such termination or discontinuance, to the extent then funded, or the amounts credited to the employees' accounts are nonforfeitable.

Id. § 401(a)(7) (as of Sept. 1, 1974). Neither provision, however, required vesting for employees who were terminated or left service before they became eligible to retire.

The regulations that implemented the pre-ERISA version of § 401 doom any possible argument that § 401(a)(7) required vesting for employees who leave service before reaching the minimum retirement age. Those regulations specify that § 401(a)(7) applies only "upon the termination of the plan or upon the complete discontinuance of contributions under the plan" and protects only "nonforfeitable rights of an employee." See 26 C.F.R. § 1.401-6(a) (as of Sept. 1, 1974). The regulations further specifically recognize termination of employment prior to retirement as a contingency that renders an employee's rights forfeitable:

> [I]f, under the terms of a pension plan, an employee will lose the right to any annuity purchased from, or to be provided by, contributions made by the employer if his services should be terminated before retirement, his beneficial interest in such contributions is forfeitable.

Id. § 1.402(b)-1(a)(2)(ii) (as of Sept. 1, 1974).

Taken together, pre-ERISA § 401(a)(4) and § 401(a)(7) preclude a governmental plan from (1) vesting benefits in a manner that discriminates in favor of certain groups of employees, or (2) divesting employees of nonforfeitable benefits accrued as of the date of termination of, or discontinuance of contributions to, the plan. This is all that § 411 requires.

The Judicial Retirement Plan satisfies these pre-ERISA vesting requirements even though a judge must remain in active service until she reaches retirement age and applies for

11

retirement.  First, since all members of the Plan are judges, the Plan is not susceptible to discriminatory vesting in violation of § 401(a)(4).  Second, the Plan has not terminated or discontinued contributions, and thus neither event that triggers § 401(a)(7) has occurred.  Cf. Debell v. Bd. of Trs., Pub. Emps.' Ret. Sys. (PERS), 815 A.2d 997, 1001 (N.J. App. Div. 2003) (holding that the vesting requirement under pre-ERISA § 401(a)(7) "assures that all employees with accrued benefits would be vested according to the schedule contained in the statute if the <u>plan</u> were terminated, not as petitioner argues when an employee-member of the plan is terminated").  In any event, the Plan's provision that a judge loses the right to a retirement allowance if she separates from service before becoming eligible to retire does not run afoul of § 401(a)(7)'s vesting requirements.  The operative regulations expressly provide that this type of forfeiture is not prohibited by § 401(a)(7).  <u>See</u> 26 C.F.R. 1.402(b)-1(a)(2)(ii) (as of Sept. 1, 1974).  The Plan thus satisfies the vesting requirements of the IRC and qualifies for tax benefits as a governmental plan even though it does not entitle a judge to retirement benefits if she separates from service before she reaches the minimum retirement age.

Coffey's only response is to claim that more recent IRS guidance concerning the vesting requirements of § 401(a)(7) indicates that a governmental plan must provide for vesting of

12

benefits once the service time requirement is met.  She is mistaken.

The April 2012 IRS memorandum Coffey relies on sets forth procedures for reviewing vesting provisions of governmental plans that apply for a determination letter from the agency. See Doc. No. 20-2.  It identifies three "safe harbor vesting schedules" that are "deemed to satisfy the pre-ERISA vesting rules," including a schedule that provides for full vesting after 15 years of creditable service.  See id. at 3.

Although Coffey correctly notes that the Plan does not fall within any of the safe harbors if it is construed to require a judge to be in active service when she applies for retirement, she misreads the memorandum to suggest that a plan is ineligible for favorable tax treatment unless it is covered by one of the safe harbors.  In fact, the memorandum merely specifies that a plan that does not qualify under a safe harbor must be referred to specific individuals within the agency "for further analysis and resolution."  Id. at 4.  Such plan may receive a favorable determination letter upon further review.  See id.  Simply put, the IRS memorandum does not identify the minimum vesting requirements a plan must satisfy.  Rather, the safe harbors are a procedural shortcut the agency uses to identify plans that easily satisfy the pre-ERISA vesting requirements.

Because the Internal Revenue Code does not require a governmental plan to grant vested retirement rights to an

employee who leaves active service before reaching retirement age, the Plan's favorable tax status is not threatened if it is construed in accordance with its plain meaning.  The Plan's failure to qualify under one of the safe harbors has no effect on this conclusion.

## IV.  CONCLUSION

In summary, § 100-C:5, I unambiguously requires a judge to remain on the bench until she satisfies both the age and years of service requirement in order to qualify for a service retirement allowance.  Because Coffey resigned from service prior to reaching retirement age, she is not entitled to retire under the Plan.

Since each of Coffey's claims rests on her incorrect interpretation of § 100-C:5, I, the Plan is entitled to judgment as a matter of law on all claims.  Accordingly, I grant the Plan's motion for summary judgment (Doc. No. 22) and deny Coffey's motion for summary judgment (Doc. No. 20).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

August 14, 2019

cc:  Caroline M. Fiore, Esq.
     Stephen D. Rosenberg, Esq.
     Russell F. Hilliard, Esq.
     Scott H. Harris, Esq.
     Benjamin B. Folsom, Esq.